UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                                  Crim. No. 23-cr-10136-LTS

NATHAN WADSWORTH

**DEFENDANT'S SENTENCING MEMORANDUM**

Nathan Wadsworth submits this sentencing memorandum in support of his request for a sentence of 25 months, followed by 36 months of supervised release. The sentence requested is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Mr. Wadsworth has signed a plea agreement pursuant to Federal Rule of Criminal procedure 11(c)(1)(C) (ECF No. 3), wherein the parties agree that the Total Offense Level under the Sentencing Guidelines is 16 (Plea Agreement ¶ 4). The parties further agree on a sentence of incarceration for a term of 25 months, 36 months supervised release, forfeiture and restitution (Plea Agreement ¶ 5. In exchange for the plea, the Government has agreed not to charge him with aggravated identify theft under 18 U.S.C. § 1028A.

There is no discussion in the plea agreement as to the Criminal History Category, however, Mr. Wadsworth has a criminal history score of zero (see PSR ¶ 42), which results in a CHC of I. The Guidelines imprisonment range for TOL 16 CHC I is 21 to 27 months (see PSR ¶ 75).

This memorandum will submit reasons why this Court should accept the Plea Agreement, and sentence Mr. Wadsworth to 25 months' imprisonment, followed by three years of supervised release.

## I.     THE GUIDELINE CALCULATION

The U.S. Probation Office has prepared a presentence report ("PSR") in this case. Probation has determined the Total Offense Level is 16, and Mr. Wadsworth's criminal history category is I, with 0 criminal history points. Using the guidelines currently in effect, the guideline range this calculation is 21 to 27 months.

Moreover, under the Sentencing Guidelines due to take effect on November 1, 2023, Mr. Wadsworth qualifies as a zero-point offender. This would reduce his Total Offense Level to 14, with a guideline range of 15 to 21 months.

## II.    FACTUAL BACKGROUND

Nathan Wadsworth is a law-abiding citizen, and had no criminal history before committing the instant offense. He is hardworking and thoughtful, and a good person. After studying engineering and economics at college, he began work in the banking industry. Unfortunately, Mr. Wadsworth took actions that led to this case because he was living beyond his means and having to pay off both student loans and credit card debt.

Mr. Wadsworth asks the Court to consider not just his criminal acts, but also his lack of prior criminal history, his demonstrated remorse, as well as his agreement to forfeit the money he made from the scheme. A sentence within the advisory guideline range is fair and just in this case.

## III.   THE COURT SHOULD ACCEPT THE PLEA AGREEMENT BECAUSE IT IS CONSISTENT WITH THE PRINCIPLES OF 18 U.S.C. § 3553(a)

Judges are vested with considerable discretion to determine sentences in accordance with the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Booker*, 543 U.S. 220, 259-60 (2005). When imposing a sentence, the Court should "strive to

2

construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008). The punishment imposed must be "sufficient, but not greater than necessary" to comply with the purposes of sentencing, including by promoting respect for the law, affording adequate deterrence, and protecting the public from further criminal violations. 18 U.S.C. § 3553(a)(2). The Court should consider these factors, among others, as a "constellation," with none controlling the inquiry and each weighed and balanced in the context of each individual case. *Rodriguez*, 527 F.3d at 228. Here, the recommended sentencing range is a sufficient penalty that promotes respect for the law, deters future misconduct by Mr. Wadsworth as well as other defendants.

There is no absolute right to have a guilty plea accepted, and a court may reject a plea in the exercise of sound judicial discretion. *Santobello v. New York*, 404 U.S. 257, 262 (1971). Thus, where the parties have agreed to a sentence pursuant to Rule 11(c)(1)(C), for example, the court has the power – and under the Sentencing Guidelines, the explicit obligation – to consider whether that sentence is adequate. U.S.S.G. § 6B1.2(c)[7]; *see Crowell*, 60 F.3d at 204 ("We have no doubt that [the court's evaluation of the plea] may include a consideration of the punishment allowable under the agreement, as compared to the punishment appropriate for the defendant's conduct as a whole."). Yet, a court may not act arbitrarily (*United States v. Moore*, 916 F.2d 1131, 1136 (6th Cir. 1990)); if it elects to reject a plea agreement, it must be able to "articulate a sound

---

[7] The Guideline provides: In the case of a plea agreement that includes a specific sentence (Rule 11(c)(1)(C)), the court may accept the agreement if the court is satisfied either that:
    (1) the agreed sentence is within the applicable guideline range; or
    (2) the agreed sentence departs from the applicable guideline range for justifiable reasons.

U.S.S.G. § 6B1.2 (1994); *see also id.* comment.

3

reason" for doing so.  *United States v. Delegal*, 678 F.2d 47, 50 (7th Cir. 1982) (citing *United States v. Davis*, 516 F.2d 574, 578 (7th Cir. 1975)); *see also United States v. Ritsema*, 89 F.3d 392, 398 n. 5 (7th Cir. 1996); *United States v. Greener*, 979 F.2d 517, 519 (7th Cir. 1992); *accord United States v. Maddox*, 310 U.S. App. D.C. 379, 48 F.3d 555, 558 (D.C. Cir. 1995) (collecting cases); *Moore*, 916 F.2d at 1135-36.

The Court's concern for § 3553(a) considerations is no less pressing when the Court is called upon to accept a sentencing recommendation attached to a plea which is the product of a plea bargain than it is when the Court determines the appropriate sentence itself. *See, e.g.,* Am. Bar Ass'n, *ABA Standards for Criminal Justice: Pleas of Guilty* (3d ed. 1999), § 14-1.1(b), at 1, ("As part of the plea process, appropriate consideration should be given to the views of the parties, the interests of the victims and the interest of the public in the effective administration of justice."); *see also* Fed. R. Crim. P. 11(c)(3)(A) ("To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report."); *Santobello v. New York*, 404 U.S. 257, 262 (1971).

Beyond a guilty plea itself, it is well established that district courts have broad discretion in deciding whether or not to accept a plea agreement.  *United States v. Orthofix, Inc.*, 956 F. Supp. 2d 316 (D. Mass. 2013). That discretion, of course, is not unbridled. Instead, when considering whether to accept or reject a plea agreement, the district court must reach a "rational decision" based on "all relevant factors." *United States v. Cota-Luna*, 891 F.3d 639, 648 (6th Cir. 2018). And it is generally held that "district courts 'must set forth, on the record, both the prosecutor's reasons for framing the [charge] bargain as he did and the court's justification for rejecting the bargain.'" *Moore*, 916 F.2d at 1136 (quoting *United States v. Miller*, 722 F.2d 562, 566 (9th Cir. 1983)).  Here the parties engaged in plea negotiations, wherein both parties received benefits.  The

4

defendant has the right to argue for a sentence of 25 months, with an offense level of 16. In exchange, he has forsworn the right to a jury trial. The Government has agreed not to charge him with aggravated identify theft under 18 U.S.C. § 1028A.

### A. The History and Characteristics of the Defendant and The Nature and Circumstance of the Offense

Under 18 U.S.C. § 3553(a)(1), the Court must consider the "history and characteristics of the defendant." Nathan Wadsworth is a good person with a positive background. He grew up in Syracuse, New York, where he currently lives with his parents. He has three siblings who all live in New York. He is 32-years old, and is coming to terms with what he has done and what it means for his future.

Nathan's father was a truck driver, and his mother stayed home to raise the children. Nathan received a full academic scholarship to the Christian Brothers Academy, a private high school. He graduated in 2009, and participated in lacrosse, bank, and National Honor Society. The school was a great opportunity for him but he was often reminded by the other students that he was not as financially well off as they were.

Nathan studied at Syracuse University from 2009-2010, the University of Texas at Arlington from 2010-2011, and Onondaga Community College from 2011 to 2012. Between 2012 and 2018 he took classes at the University of Massachusetts – Boston. He began studying chemical engineering, and then switched to economics. While taking classes at UMass-Boston he began work at Bank of America in December 2013, where he worked as a personal banker and assistant manager until June 2016. He then worked at Wegman's as a team leader for six months. He again worked for Bank of America from December 2016 to March 2019 as a branch manager and business broker. He was recruited by JP Morgan Chase Bank, and worked there as a branch manager for a year. He was then recruited by PNC Bank where he worked as a branch manager for 18 months. He was

5

terminated due to the instant offense.

Nathan understands that he can never again work in the financial industry, where he had built up ten years of experience and was making a good living. Unfortunately, due to student loans and credit card debt, he was living beyond his means. He made extremely poor choices, which he fully acknowledges and takes responsibility for. He has made significant progress in understanding why he was tempted to engage in the fraud, and has made changes in his life so he is never in that position again.

Since he was fired from PNC Bank in December 2021 and then contacted by federal agents in January 2022, he left Boston and moved back to Syracuse and is living with his parents. He started work in sales at Spectrum Communications, and currently works at Amazon, where he started as a packer, was promoted to flow manager, and again promoted to his current position as the manager of the packing department. He works 48 to 50 hours per week, and earns $20.30 per hour, and makes less than half of what he was earning at PNC Bank. He hopes to go back to school and finish his degree in his original area of study: engineering / STEM. He sought out mental health services, and he continues with treatment. He is currently in a relationship with Evelyn Weston, who fully supports him.

Mr. Wadsworth was enticed by the supposed easy money that he could make by taking money from dormant accounts of people who were not native to the United States. In retrospect, he would not make the same error, and would give anything to go back in time and undo his actions. Of course, he cannot and he must and does live with the results. He understands that he will be incarcerated, and that he must pay back what he took.

### B. The Purposes of Sentencing

The Court should ultimately arrive at an appropriate sentence after a holistic consideration of deterrence (both specific and general), public protection, just punishment, and rehabilitation. As far as deterrence is considered, both specific and general, a man has been arrested and convicted of a federal felony. Under the sentence in the plea agreement, he will be incarcerated for 25 months, and under federal probation supervision for three years. This is a substantial sentence that will sufficiently punish Mr. Wadsworth for his actions and defer others from engaging in similar conduct.

The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which are "the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2). In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a)(1) – (7).

Defendant notes that deterrence and punishment goals of sentencing are only part of the equation, albeit that focused on by the prosecution. Incarceration has consequences

that must be taken into consideration.  These consequences, often only dimly foreseen at sentencing, have a tremendous impact, not only on the offender, but also on families, communities, and on the nation as a whole.  Some of the consequences of a felony conviction are well known – longstanding restrictions on travel, firearms ownership, and voting – but many additional restrictions have been enacted in laws passed since the beginning of the "get tough" movement in the 1980s.  There have been hundreds of changes to state and federal law that impose additional penalties on felons, penalties that also impact families and the communities from which they come.

Mr. Wadsworth asserts that a sentence of 25 months incarceration and three years' supervised release will provide deterrence, just punishment for his crime, yet also take into consideration the collateral consequences of imprisonment.

It should also be recognized that it is the certainty and swiftness of punishment that can have a substantial deterrent effect, more than the sentence's severity.  Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects."  Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006).  "Three National Academy of Science panels … reached that conclusion, as has every major survey of the evidence."  *Id.*; *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm:  Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-448 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").  Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University.  *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity:  An Analysis of Recent Research* (1999) summary available at http://members.multimania.co.uk/lawnet/SENTENCE.PDF.  The report, commission by

8

the British Home Office, examined penalties in the United States as well as several European countries. *Id.* at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates … were not sufficient to achieve statistical significance." *Id.* at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentence is capable of enhancing deterrent effects." *Id.* at 1.

The sentence also promotes respect for the law: Mr. Wadsworth will have a felony conviction on his record. It will affect every government or private application he seeks, every loan he applies for, every government benefit he tries to obtain. He will never again be able to work in the financial industry.

The Court will, no doubt, want to impose a sentence that reflects the seriousness of the conduct at issue in this case. In this task, § 3553(a)(1)(3) directs the Court to consider, among other factors, the "kinds of sentence available[.]" Here, the Court has the ability of impose a sentence of 25 months incarceration, followed by supervised release.

## IV. A SENTENCE OF 25 MONTHS WOULD BEST SATISFY THE GOALS OF §3553(a)

### A. Need for Just Punishment in Light of the Seriousness of the Offense

The need for retribution is measured by the degree of "blameworthiness," which "is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (mens rea), motives, role in the offense, and mental illness or other diminished capacity." Richard S. Frase, <u>Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality"</u>

9

Relative to What?" 89 Minn. L. Rev. 571 590 (February 2005).  The guidelines include none of the factors bearing on Mr. Wadsworth's degree of culpability.

Mr. Wadsworth has shown exceptional remorse and acceptance of responsibility.  His own words speak loudest on the issue of his genuine remorse, and the Court is referred to the attached allocution statements.  His agreement to forfeit the money he received in the fraud scheme also demonstrates his genuine remorse and acceptance of responsibility.

**B.     Need for Deterrence**

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects."  Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006).  "Three National Academy of Science panels … reached that conclusion, as has every major survey of the evidence."  Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm:  Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-448 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").  Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University.  See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity:  An Analysis of Recent Research (1999) summary available at http://members.multimania.co.uk/lawnet/SENTENCE.PDF.  The report, commission by the British Home Office, examined penalties in the United States as well as several European countries.  Id. at 1.  It examined the effects of changes to both the certainty and severity of punishment.  Id.  While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates … were not sufficient to achieve statistical significance."  Id. at 2.  The report concluded that "the studies reviewed do not provide a basis for inferring that increasing

the severity of sentence is capable of enhancing deterrent effects." Id. at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. See David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995); see also Gabbay, supra, at 448-449 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.").

**C.     Need for Incapacitation**

**1. Mr. Wadsworth has an exceptionally low risk of recidivism**

Mr. Wadsworth is 32 years old, a true first offender with zero criminal history points, a high school graduate with several years of college credits, and has been employed throughout his adult life.

The proposed 2023 Guidelines Manual, due to take effect on November 1, 2023, creates a new Chapter Four guideline at § 4C1.1 (Adjustment for Certain Zero-Point Offenders). The Commission found that "zero-point offenders recidivated far less often than other offenders (27% vs. 42% for one-point offenders, and 49% overall)." United States Sentencing Commission, 2023 Amendments in Brief, Amendment #821.[1] The Sentencing Commission held a public meeting on August 24, 2023, and voted to make the provision retroactive. Defendant maintains that this new guideline should be applied to him. See PSR ¶ 94.

In imposing the lowest sentence sufficient to account for the need to protect the public from further crimes of Mr. Wadsworth, this Court should consider the statistically low risk of recidivism presented by his history and characteristics. See, e.g., United States

---

[1] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_821.pdf.

v. Darway, 225 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding downward variance on basis of defendant's first-offender status); United States v. Hamilton, 323 Fed. Appx. 27, 31 (2d Cir. 2009) ("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the guidelines"); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming below-guideline sentence based on defendant's age, which made it unlikely that he would again be involved in a violent crime); United States v. Urbina, slip op., 2009 U.S. Dist. LEXIS 18239, *7-*8 (E.D. Wis. Mar. 5, 2009) (considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history, and strong family ties); United States v. Cabrera, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendant "with zero criminal history points are less likely to recidivate than all other offenders"); Simon v. United States, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (basing variance in part on defendant's age of 50 upon release because recidivism drops with age); United States v. Ward, 814 F. Supp. 23, 24 (E.D. Va. 1993) (granting departure based on defendant's age as first-time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct" before committing his first offense).

### 2. Due to the ban on working in the financial industry, Mr. Wadsworth will be unable to commit a similar offense in the future

Mr. Wadsworth has a lifetime ban and will be unable to be employed or act as a manager of the financial accounts of others. In determining whether there is a need for imprisonment to prevent future crimes, the defendant's inability to commit similar crimes in the future is highly relevant. See, e.g., United States v. Olis, 2006 U.S. Dist. LEXIS 68281 at *43-*44, 98 A.F.T.R.2d (RIA) 6846 WL 2716048, at *13 (S.D. Tex. Sept. 22, 2006) (granting substantial variance in part because "the attendant negative publicity, the loss of his job and accounting a law licenses, and the need to provide support for his family will

12

provide adequate deterrence against any potential future criminal conduct."). No further term of imprisonment is necessary to prevent Mr. Wadsworth from committing similar crimes in the future.

**D.     Need to Avoid Unwarranted Disparities and Unwarranted Similarities**

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct. 18 U.S.C. § 3553(a)(6). The Court should avoid unwarranted similarities in sentencing among defendants who are different in ways not accounted for in the guideline range, see Gall v. United States, 552 U.S. 38, 55 (2007) ("need to avoid unwarranted similarities among other co-conspirators who were not similarly situated"); United States v. Ovid, 2010 U.S. Dist. LEXIS 105390, 2010 WL 3940724 (E.D.N.Y. 2010) (sentencing two defendants with similar guideline ranges to 60 months and 126 months respectively based on distinctions in circumstances of the offenses and characteristics of the defendants), and unwarranted differences among defendants whose conduct and characteristics are similar. See United States v. Parris, 573 F. Supp. 2d 744, 753, 756-762 (E.D.N.Y. 2008).

The PSR has included Judiciary Sentencing Information (JSIN) data (PSR ¶¶90-92), which shows that the average length of imprisonment is 15 months. Although the 25 months agreed to in the plea agreement is above the average sentence for similarly-situated defendants, he notes that the Government has agreed not to file charges of aggravated identity theft. Under 18 U.S.C. §1028A, the statute that governs aggravated identity theft, the term of imprisonment is 24 months per count, to run consecutive to any other term of imprisonment.

**E.     Need to Provide Restitution to Victims of the Offense**

Although for purposes of determining the guidelines sentence in the plea agreement the defendant agreed that the loss was between $95,000 and $150,000, the issue of

13

restitution is separate and distinct. PNC Bank has reimbursed the individual victims of the fraud, with a total amounting to $121,002.05 (PSR ¶ 23). Defendant notes that he has agreed to forfeit this amount.

Regarding restitution, pursuant to 28 C.F.R. Part 9, the United States Attorney's Office for the District of Massachusetts may submit a restoration request to the Money Laundering and Asset Recovery Section of the Department of Justice, seeking approval for the net proceeds of the disposition of any assets forfeited in satisfaction of the forfeiture money judgment to be restored back to the victim in this case, which may, in turn, satisfy in full or in part any restitution order.

Mr. Wadsworth acknowledges that the Attorney General, or his designee, has the sole discretion to approve or deny the restoration request. He requests that the U.S. Attorney for Massachusetts submit a restoration request to the Department of Justice Money Laundering and Asset Recovery Section, and to credit the outstanding balance of any Order of Forfeiture (Money Judgment) by the amount of any non-restoration restitution payment made to the Clerk of the Court in full or partial satisfaction of the restitution in this case.

## CONCLUSION

The defendant respectfully requests this Honorable Court fashion a sentence "sufficient but not greater than necessary," as provided for in 18 U.S.C. § 3553(a). Appropriate sentencing would be a sentence of 25 months, three years of supervised release, and forfeiture in the amount of $121,002.05 under a payment plan.


Respectfully submitted,
NATHAN WADSWORTH
By his attorney,


/s/ MARK W. SHEA                                              Dated:  September 22, 2023
Mark W. Shea
BBO No. 558319
Shea and LaRocque, LLP
929 Massachusetts Avenue, Suite 200
Cambridge MA  02139
617.577.8722   telephone
markwshea@gmail.com

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 22, 2023.

/s/ Mark W. Shea
MARK W. SHEA