IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

vs.

**NATHAN WADSWORTH,**

       **Defendant.**

**Criminal Case No. 23-10136-LTS**

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government requests that this Court accept the Plea Agreement entered mutually by the parties, Dkt. No. 3, and sentence Nathan Wadsworth as follows:

a) incarceration for a term of 25 months;
b) a fine to be determined by the Court at the time of sentencing;
c) 36 months of supervised release;
d) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court by the date of sentencing;
e) restitution of at least $121,002.05, or as ordered by the Court, and
f) forfeiture in the amount of $121,002.05.

### BACKGROUND

Defendant Nathan Wadsworth used his position as the Manager of a PNC bank branch office and his fiduciary access to accounts to steal funds from customer accounts. More specifically, he used his privileged access to bank records to intentionally seek out accounts of customers living abroad whose accounts had not had banking transactions for extended periods of time. Using customers' stolen personal identification information and numerous forged signatures. He also used his managerial position to help him carry out his scheme by directing innocent bank personnel to open the new accounts he created.

Although the dollar losses in this case are not exceptionally high, Wadsworth's conduct is egregious and well-deserving of the 25-months prison sentence stipulated by the parties. Wadsworth was receiving a salary of $115,000 when he conducted his scheme. He used stolen identities of at least five bank customers to create numerous bogus accounts, forged signatures of at least those five bank customers to move funds among accounts and ultimately siphoned off the funds for his own use. It is readily apparent that he assumed no one was watching such inactive accounts on behalf of the foreign customers, and that branch employees would have no reason to know his creation of accounts was fraudulent or that he was stealing the account funds. The chronology of events is detailed in the PreSentence Report (PSR) at ¶¶ 10-23.

Wadsworth first used a forged signature in the name of Customer Victim No. 1 from Mexico to move $8,187 from an existing account to a new account on April 20, 2021. He waited nine days to forge another signature in the name of Customer Victim No. 1 to withdraw $2,100 for deposit into another new account he created in the name of Customer No. 2. The records indicate that Customer No. 2 was living in China. Wadsworth then forged a check in the name of Customer No. 2 to withdraw $2,100 for himself on . Over the next 90 days, Wadsworth stole the remaining $ 6,000.

On May 7, 2021, Wadsworth again forged signatures, this time in the name of a German Customer Victim No. 3, to empty the account by moving $5,065.36 to a new account in the name of Customer No. 3. On the same day and three days later, Wadsworth forged two checks for $2,500 each and deposited them into his own account.

Finding success with smaller accounts, Wadsworth identified the account of Customer Victim No. 4, living in Germany. He changed bank records from her German address to a purported Somerville, MA address. Using stolen personal identifiers and forged signatures, he

transferred all of her funds, $107,749.16, to a bogus account in her name. Wadsworth used two wires to transfer $12,000 to his personal account. He made several withdraws of small amounts of cash via ATM. He then used stolen identifiers of Bank Customer No. 5, a foreign bank customer, to create another bogus account. Forging seven checks, he transferred $80,000 from the bogus account in the name of Customer No. 4 to the bogus account in the name of Bank Customer No. 5. From there, Wadsworth used forged checks and ATMs withdraw all the funds.

The defendant's sentencing memorandum, Dkt. No. 18, suggests that Wadsworth committed his scheme "because he was living beyond his means and having to pay off both student loans and credit card debt. The facts, taken from his own bank records for 2021, belie this claim. A partial list of the funds he spent reflects:

| Date | Amount | Description |
|---|---|---|
| June 2 | $2,000 | Barmakian Jewelers, fine jewelry |
| July 29 | $4,674 | ATM cash withdrawal |
| July 29 | $3,110 | ATM cash withdrawal |
| August 9 | $450 | G2O, Spa and Salon |
| August 9 | $450 | Jewelers Mutual, Jewelry Insurance |
| August 9 | $2,956 | Committee Restaurant |
| August 16 | $425 | Yetti, insulated drinkware and coolers |
| August 20 | $770 | Airbnb, California |
| August 20 | $236 | Hall Wines LLC, Napa Valley |
| August 23 | $2,650 | Crown & Calibre Jewelers, luxury watches online/Atlanta, GA |
| August 27 | $1,195 | Anchorage Motor Inn, York, Maine |
| October 14 | $169 | Hall Wines LLC, Napa Valley |
| October 25 | $2,166 | Lia Bee LLC, Lia Bancroft Wedding Planner |

| | | |
|---|---|---|
| October 25 | $1,034 | Seat Geek, event tickets |
| November 15 | $775 | Del Dotto Vineyard, Napa, CA |
| November 22 | $465 | Theorem Vineyard, Calistoga, CA |

Along the way, Wadsworth made numerous cash withdrawals from ATM's and spent thousands of dollars at various restaurants.

As with his growing thefts from customer accounts, Wadsworth' expenditures for luxury items and cash withdrawals grew. His scheme was only inadvertently discovered when, unknown to the defendant, PNC Bank sent a security verification letter to Victim No. 4 to confirm her knowledge and approval of her account change to a local address. Victim No. 4 contacted PNC bank to advise of the fraud. PNC promptly conducted an investigation. On November 24, 2021, PNC officials interviewed Wadsworth. Confronted with the clear documentary proof of his fraud scheme, he confessed.

## THE PRESENTENCE REPORT

The U.S. Probation Office and this Court are required to calculate the applicable U.S.S.G guidelines and total offense level, before this Court undertakes its determination of the appropriate sentence in this case. Here, the PSR has calculated the total offense level based on the applicable guidelines and accurately arrives at the currently applicable total offense level of 16, with a resultant guideline sentencing range of 21 to 27 months. PSR at ¶¶ 24-38, 75. The PSR subsequently added paragraph 94 and comment at p. 22 to acknowledge that the proposed U.S.S.G. § 4C1.1 guideline has yet to be enacted. Nonetheless, the PSR suggests that this Court may wish to consider a downward variance to account for this anticipated change in the instant sentencing. . . ." Unfortunately, the PSR does not at that same juncture take note of the fact that "in the instant sentencing" the sentence to be imposed is restricted by the binding Plea Agreement

4

entered pursuant to Rule 11(c)(1)(C).  In essence, while calculation of the applicable guidelines is required, the sentence in this case is determined by this Court's acceptance or rejection of the Plea Agreement.  As this Court and the parties, including the defendant individually, all agreed at the Rule 11 hearing on June 8, 2023, this Court will either (a) accept the Plea Agreement and impose the sentence stipulated by the parties, *see* Rule11(c )(4), or (b) reject the plea agreement.  *See* Rule 11(c)(5).

The defendant's sentencing memorandum, Dkt. No. 18, requests that this Court accept the Plea Agreement and impose the sentence stipulated by the parties.  The defendant's memorandum sets forth multiple reasons why the agreed-upon disposition is in the best interests of the defendant, the Government and the public interests.

The Government also requests that this Court accept the Plea Agreement and sentence the Defendant accordingly, with one variance from the defendant's stated sentencing terms.  The defendant's memorandum fails to acknowledge his signed agreement that the sentence imposed by this Court must include both an Order of restitution and an Order of forfeiture.  *See* Dkt. 3 at 3.  His sentencing recommendation includes only forfeiture in the amount of $121,002.05.  Dkt. 18 at 15.  The Plea Agreement and this Court's obligations, if it accepts the Plea Agreement, require both Orders.

**RESTITUTION AND FORFEITURE ARE REQUIRED**

The law is well-settled that forfeiture and restitution are both mandatory because they are two independent components of a defendant's sentence, authorized by different statutes, and serve different purposes: restitution makes victims whole, and forfeiture disgorges a defendant of his ill-gotten gains.  *See, e.g., United States v. Bodouva*, 853 F.3d 76, 78 (2d Cir. 2017) (quoting *United States v. Torres*, 703 F.3d 194, 196, 203–04 (2d Cir. 2012)).  "[R]estitution and forfeiture serve

different goals. The focus of restitution is on the victim, but forfeiture focuses on the defendant." *United States v. Moss*, 34 F.4th 1176, 1194 (11th Cir. 2022) (quoting *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344 (11th Cir. 2009) (citation and quotation marks omitted and alterations adopted). Unlike restitution, "forfeiture is also a punitive action against the defendant." *Id.*

Congress designed the criminal forfeiture statutes to require the forfeiture of proceeds upon the conviction of a forfeitable offense without limitation. *See* 28 U.S.C. § 2461(c) ("If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case.") (emphasis added); *United States v. Monsanto*, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied."); *United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) ("Forfeiture is mandatory even when restitution is also imposed. These two aspects of a defendant's sentence serve distinct purposes."). As the First Circuit explained, "[f]orfeiture orders go beyond disgorgement of profits. They 'help to ensure that crime does not pay: [t]hey at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises.'" *United States v. Carpenter*, 941 F.3d 1, 10 (1st Cir. 2019) (quoting *Kaley v. United States*, 571 U.S. 320, 323 (2014) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 630 (1989))).

Restitution is also a mandatory component of sentencing. The plain language of the Mandatory Victim Rights Act ("MVRA") requires restitution in cases where there are victims "notwithstanding any other provision of law." 18 U.S.C. § 3663A(a)(1) ("notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in

6

subsection (c), the court <u>shall order, in addition to … any other penalty authorized by law</u>, that the defendant make restitution to the victim of the offense") (emphasis added).

"If the funds from forfeiture and restitution go to different parties, requiring a defendant to pay both forfeiture and restitution does not result in an impermissible double recovery." *United States v. Harley*, No. 21-11432, 2022 WL 1124990, at *1 (11th Cir. Apr. 15, 2022) (vacating and remanding district court order that did not order both forfeiture and restitution) (citing *United States v. Hernandez*, 803 F.3d 1341, 1344 (11th Cir. 2015)).

Because restitution and forfeiture are both mandatory and entered pursuant to different statutory schemes serving distinct purposes, courts have refused to find that payments towards restitution entitle a defendant to an offset towards forfeiture, or vice versa. *See id.; Bodouva*, 853 F.3d at 78-79 ("Because the statutory schemes authorizing restitution and forfeiture are separate, district courts are bound not to reduce the amount of a mandatory criminal forfeiture order by the amount of past or future restitution payments, in the absence of specific statutory authorization to do so."); *see also United States v. Channon*, 973 F.3d 1105, 1113 (10th Cir. 2020) ("Statutes mandating restitution and forfeiture do not allow a defendant's payments toward one to offset the amount owed to the other.") (citing *United States v. Arnold*, 878 F.3d 940, 946 (10th Cir. 2017) ("Several courts have reached the same conclusion, holding that the statutes mandating restitution and forfeiture do not allow a defendant's payments toward one to offset the amount owed to the other.") (collecting cases)). In refusing to offset forfeiture by amounts paid towards restitution, courts have specifically referenced the punitive nature of forfeiture. *See Bodouva*, 853 F.3d at 79 ("Criminal forfeiture is a form of punishment. As such, it is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place.") (quoting *United States v. Peters*, 732 F.3d 93, 101 (2d

Cir. 2013)); *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007) ("While the focus of restitution is on the victim, forfeiture focuses on the defendant. In addition to forcing the disgorgement of dishonest profits, therefore, forfeiture is also a punitive action against the defendant.").

In his sentencing memorandum, the defendant has requested that the United States Attorney submit a restoration request to the Department of Justice MLARS to credit any forfeiture towards his restitution. As an initial matter, restoration requests are a matter that Congress has delegated solely to the Attorney General. *See* 21 U.S.C. 853(i)(1) incorporated by 18 U.S.C. 982(b) ("With respect to property ordered forfeited under this section, the Attorney General is authorized to—…restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section."); *see also United States v. Bulger*, No. 99-cr-10371-DJC, 2013 WL 6017351, at *2 (D. Mass. Nov. 13, 2013) ("'it is clear that the government may, in appropriate circumstances, agree to restore or assign forfeited proceeds to the victims of the underlying criminal conduct' and that the government's election to do so is a matter of its discretion") (emphasis added) (quoting *United States v. O'Connor*, 321 F. Supp. 2d 722, 729 (E.D. Va. 2004)); Asset Forfeiture Policy Manual (2023) ("Because forfeited assets are property of the government, courts and defendants lack authority to use them to satisfy a defendant's criminal debts, including fines or restitution obligations.") Accordingly, it is not an appropriate objection to a PSR, nor may the court order the US Attorney's Office (USAO) to submit--or the Attorney General to grant—a restoration request.

Further, the Attorney General has promulgated rules and policies governing restoration requests. *See* 28 C.F.R. Part 9; Asset Forfeiture Policy Manual (2023). The U.S. Attorney's Office

8

must make four representations in any restoration request, set forth in the Asset Forfeiture Policy Manual:

1. All known victims have been properly notified of the restitution proceedings and are properly accounted for in the restitution order.
2. To the best of the U.S. Attorney's, or designee's, knowledge and belief after consultation with the seizing agency, the losses described in the restitution order have been verified, comport with the remission requirements, and reflect all sources of compensation received by the victims, including returns on investments, interest payments, insurance proceeds, refunds, settlement payments, lawsuit awards, and any other sources of compensation for their losses.
3. **To the best of the U.S. Attorney's, or designee's, knowledge and belief after consultation with the seizing agency, reasonable efforts to locate additional assets establish that the victims do not have recourse reasonably available to obtain compensation for their losses from other assets, including those owned or controlled by the defendants.**
4. There is no evidence to suggest that any of the victims knowingly contributed to, participated in, benefitted from, or acted in a willfully blind manner, toward the commission of the offenses underlying the forfeiture or a related offense.

To ensure that restoration does not confer an undue benefit on the defendant, consistent with representation 3 above, the U.S. Attorney's Offices typically require a defendant to complete a financial disclosure statement before either including any language regarding restoration in the plea agreement or making a restoration request, so that that Office can determine the appropriate representations.

Even if a defendant is financially unable to pay both restitution and forfeiture, the U.S. Attorney's Office generally only agrees to make a restoration request if we have identified specific assets that we will forfeit at the time of the plea or sentencing.  This is because we can only submit a restoration request **once the Government has forfeited actual assets**.  A forfeiture money

judgment is a determination of the amount the defendant gained from his offenses of conviction, which the Government can collect on, but it is not any amount the Government actually has in hand.  Accordingly, to contemplate a restoration request at this time, where we have not yet forfeited actual assets, is to make the U. S. Attorney's Office beholden to some future event that may never happen.  Restitution and forfeiture are both mandatory; restitution lasts for 20 years after release from prison; and forfeiture lasts until the death of the defendant.  Many things can change in the time.

Nor does a district court have authority to apply forfeited assets toward the Defendant's restitution obligations, or to direct that the United States Attorney do so. *United States v. Sherwood*, No. 123CV406LEKDJS, 2023 WL 4546252, at *4 (N.D.N.Y. July 14, 2023) ("This Court therefore follows its sister courts in holding that it lacks the ability to order the Government to credit Defendant's forfeited assets toward his restitution obligations. This is consistent with the approach taken by other circuits, which have held that district courts lack the authority to apply forfeited assets toward restitution obligations.") (citing *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014) ("In light of the statutory framework governing restitution and forfeiture, we hold that a district court generally has no authority to offset a defendant's restitution obligation by the value of forfeited property held by the government, which is consistent with the approach taken by the Fourth, Seventh, Eighth, Ninth, and Tenth Circuits.")).

## THE REQUESTED SENTENCE

In his sentencing memorandum, the Defendant repeatedly asks this Court for leniency.  To obtain that leniency, the Defendant asks this Court to impose the sentence stipulated in the Plea Agreement.  The Defendant acknowledges that the agreed-upon sentence provides him with the leniency he seeks.

The Government agrees, in that the defendant's conduct here was egregious, he presents no circumstances of family, educational opportunities, employment (including his salary during the charged offenses), health or otherwise mitigating circumstances, and the stipulated sentence takes into account the benefits to both parties. The defendant will receive leniency in a sentence well below the applicable guidelines and mandatory consecutive sentence(s) for multiple offenses of Aggravated Identity Theft he would face, but for the Rule 11(c)(1)(C) plea. The Government has taken into consideration the Defendant's admissions to bank investigators and his early acceptance of responsibility, by which the Government obtains a final resolution of the case without the need to commit large additional resources.

Moreover, the sentence the parties jointly request be imposed serves the purposes of consideration of the gravity of the offenses, the defendant's historical and offense characteristics, personal and societal deterrence, protection of the public and promotion of respect for the law. 18 U.S.C. § 3553(a)(1) – (7).

For all the reasons discussed, the Government requests that this Court sentence the defendant as follows:

> incarceration for a term of 25 months;
> a fine to be determined by the Court at the time of sentencing;
> 36 months of supervised release;
> a mandatory special assessment of $100, which Defendant must pay immediately;
> restitution of at least $121,002.05, or as ordered by the Court, due and payable immediately;
> and
> forfeiture in the amount of $121,002.05, due and payable immediately.

Respectfully submitted this 25th day of September, 2023.

                                                JOSHUA S. LEVY
                                                Acting United States Attorney

By:   /s/ *Victor A. Wild*
       VICTOR A. WILD
       Assistant United States Attorney

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                      /s/ *Victor A. Wild*
                                      VICTOR A. WILD
                                      Assistant United States Attorney
                                      Suite 900
                                      One Courthouse Way
                                      Boston, MA 02210
                                      (617) 748-3100
                                      Victor.Wild@usdoj.gov